STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO RE-09-018

JENNIFER ERB,

      Plaintiff,

      v.

DARRYL ERB,

      Defendant.

DECISION and ORDER

Hearing was held on the defendant's counterclaims raised in conjunction with plaintiff's complaint for foreclosure on November 24, 2009. The plaintiff was present and represented by counsel, Charles Cox, Esq., while the defendant was present and represented by counsel, Marvin Glazier, Esq. At hearing the parties stipulated that the Court should find for the plaintiff in the foreclosure action, and agreed to litigate the property damage issues raised in the counterclaims. They agreed that any amounts awarded to the defendant pursuant to his counterclaims should be deducted from the $42,000 otherwise payable pursuant to the foreclosure.

Ms. Erb obtained a protection from abuse order against Mr. Erb on July 16, 2007 that temporarily awarded the family home in Abbott, Maine to her and prohibited Mr. Erb from entering the premises. The parties were divorced on August 1, 2008 at which time the Court divided their personal property, awarded the business to the defendant, and awarded him the home, requiring the plaintiff to vacate by September 1, 2008. In the judgment, the court ordered Ms. Erb to "safeguard and protect" defendant's personal property that had remained on the premises and leave all items behind when she vacates. Because of the existence of the protection from abuse order, Mr. Erb was not permitted to be on the premises during the parties' divorce until Ms. Erb vacated by September 1, 2008. Mr. Erb argues that upon his return he observed significant damage

to the residence that he asserts the plaintiff caused and argues that many items that the court had awarded to him in the parties' divorce were missing or damaged.

Initially, the Court must decide issues of credibility related to the personal property, mostly tools and inherited family items awarded to Mr. Erb in the divorce. Mr. Erb testified that the missing items were located on the marital real estate, where his towing business was also located, when he was last on the property, but were missing at the time of his return. Ms. Erb testified that she did not dispose of any of the property and all of defendant's tools and pre-marital items were on the property when she left prior to noon on September 1, 2008. Because the Court believes that the discrepancies in testimony can be attributed to misperception, inadequacy of memory, and whether a party is not telling the truth, plaintiff's success on this claim hinges on the credibility of each party.

Next, Mr. Erb maintains that Ms. Erb is responsible for the dimunition in value of other property awarded to him, including business vehicles and the family residence that he claims were damaged while under her control. Since photographs were admitted to supplement the testimony of the parties with regard to these claims, there are fewer factual discrepancies to be resolved and deciding these claims turns on interpreting the evidence as well as resolving legal issues related to responsibility for damage.

Missing Personal Property Claims

With regard to his personal property that the defendant alleges is missing, the Court finds that he has not proved by a preponderance of the evidence that plaintiff took, sold, or disposed of any property awarded to him in the divorce, with the exception of the Gulf sign, which she sold for $235 as well as a case of oil. This was property awarded to him because it is perceived to be a business asset. The Court finds

that the defendant has not met his burden with regard to the items listed on Def. ex #2 and ex. #3 for the following reasons:

The parties have an intense dislike for each other that makes it equally likely that one would exaggerate or even lie if it put the other at a disadvantage.

Since the defendant had not seen the property in question for at least 14 months at the time he re-entered, his memory as to what had been on the premises, especially what equipment was in each truck, as well as the extent of the business inventory, could have been faulty.

It appears to the Court that it would be unusual for the plaintiff to remove some of the sockets in a set, as opposed to all; or some of the chain binders, as opposed to all; or some of the equipment allegedly stocked in each truck as opposed to all, as is alleged.

There was no evidence presented as to plaintiff's alleged disposition of the missing property and in the manner some that it is alleged to have been taken, frequently in parts as opposed to the whole, it would have little value.

The Court finds that defendant clearly made exaggerated claims with regard to property damage issues, to be described later, and considers this on the issue of credibility.

Damage Claims

The Court will now address the damage claims, beginning by defining the standard of care required of Plaintiff while she was in possession of the premises. The standard of care mentioned in the divorce judgment, "safeguard and protect", applies only to a one-month period and there is no proof that any particular damage claim arose during this month. The protection from abuse order omitted any standard of care reference. In light of the fact that all of the property was jointly owned during the

bailment period prior to the divorce judgment, the court will apply the common law standard applicable to situations in which the bailment is mutually beneficial, that of ordinary neglect.

Defendant is seeking compensation for damages to the marital home that occurred during the period of occupation. He complained of scratches and dents in walls, mold in a variety of locations, stained floors, worn and damaged stairs, dirty and worn doors, and a dent on a vent. The Court has carefully evaluated all photographs and testimony concerning these issues and finds that the damage complained of is the product of normal wear and tear. With regard to the true wear claims, such as worn stair treads, marked walls, and stained floors, the Court finds that the damage is clearly the cumulative result of years of use as opposed to misuse during a 14 month period. In fact, Mr. Erb, a prior girlfiend, her teenaged children, and several dogs occupied this home for several years prior to the marriage with the plaintiff. The photos of stair treads show this type of obvious wear and tear and defendant's claims to the contrary are totally lacking in credibility. With regard to the claim that various locations were moldy, dirty or stained, the Court has reviewed the relevant photos, as well as plaintiff's video that portrays many areas in the hours as clean, tidy and mold free, and concludes that the plaintiff was not neglectful, overall, in these areas. Additionally, the defendant testified that he didn't re-entered the premises until October, over a month after plaintiff left, causing the Court to conclude that any mold condition could certainly have become worse in the interim.

Next, The Court evaluates the defendant's claims of damage to personal property, primarily vehicles. The Court finds that during the relevant 14 months, the plaintiff and/or her children actually used the Laredo and Cavalier and damaged them to the extent that they could no longer be used, causing total financial loss in the

amount of $2,700. The plaintiff claims that a compressor, located outside but covered, was ruined because it became uncovered. To fail to detect this item in a yard or field containing a variety of discarded item does not constitute neglect. The defendant also wants to be compensated in the amount of $10,000 for damage to the Nissan rollback and the wrecker. They were located outside of the garage when he left and remained there while he was away. Although it probably is not neglectful to fail to move them into a garage, the Court finds that either the plaintiff did not have the keys to the vehicles or did not know the keys were located on the property and could not have moved them. Finally, the defendant complains of damage to a valuable stamp collection. The plaintiff did nothing to damage the collection, nor did she neglect to care for the stamps properly because she left them where they traditionally had been located. Again, this is an exaggerated claim, totally lacking in credibility.

Based on the above analysis, the Court finds that the sum of $3,000 should be subtracted from the amount previously specified in the proposed foreclosure order and instructs Attorney Cox to submit a proposed order consistent with this decision.

The entry is : Decision and Order completed, the Attorney for the Plaintiff shall submit a foreclosure order consistent with this decision.

Dated: December 3, 2009

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT